FOURNET, Chief Justice.
The plaintiff, Horace M. White, is appealing from the judgment of the lower *934 court rejecting his demands and dismissing his suit against Harvey V. Wallace to have annulled a sale hy notarial act executed by plaintiff on November 3, 1934, transferring to the defendant, Wallace, certain movables, and to have himself declared the owner of the business known as the Consolidated Roofing Company together with all its assets; also, for an accounting of the business by the defendant from November 3, 1934, to date.
As a basis for his action the plaintiff alleged that he was induced by the fraudulent promises and representations of the defendant to execute the above mentioned sale, transferring to defendant the plaintiff’s tile roof business (conducted under the name of Horace White, Tile Roof Contractor) at 7300 Washington Avenue, New Orleans, with the understanding that the defendant would operate the business under the name of Consolidated Roofing Company for the account of the plaintiff and would retransfer the said business and assets to the plaintiff whenever called upon to do so; that the sale, transferring certain movables consisting of an office and warehouse on leased premises at the above address, together with listed office fixtures and some roofing materials located on the premises, for a stated consideration of $500, was a mere simulation, no consideration having actually been paid; that the business was operated by the defendant continuously through the years for the account and benefit of plaintiff, who never surrendered or parted with the custody and possession thereof, except the bank account; and that, despite the fact that the defendant has acknowledged to plaintiff and to other persons that plaintiff is the sole owner of the business, offering to purchase the same from the plaintiff in July, 1946, defendant has nevertheless refused to comply with - his promise to retransfer. Coupled with the petition are certain interrogatories directed to the defendant, to be answered by him categorically.
Following the overruling hy the trial court of defendant’s exceptions of improper cumulation of actions, vagueness, no cause and no right of action, and pleas •of prescription of 1, 2, 3, 5 and 10 years, the defendant answered the interrogatories and then filed his answer, denying that the property was placed in his name for accommodation only, or that the $500 consideration was not paid; denying also promises to retransfer the business, as well as all other allegations of fraudulent action. For further answer, the defendant said that at the time of the transfer he was engaged in business as a general contractor, operating from his residence at 8020 Stroelitz Street, New Orleans; and following his purchase from the plaintiff he took over the plaintiff’s lease at 7300 Washington Avenue and continued the operation of his business from that address under the name of Consolidated Roofing Company, after complying with the law requiring the registration of trade name *936 coupled with the true name of the owner of the business. He further averred that after plaintiff had liquated his former business, he (the defendant) employed plaintiff as a salesman and estimator on a salary basis, which position the plaintiff continued to fill until July, 1946, when, because of age and ill health, he was retired on a pension.
According to plaintiff’s argument in brief, he seems to rely in support of his action on the following claims: (1) That the recited consideration of $500 in the sale of November 3, 1934, was never in fact paid; and on this point he testified that while he was given a check for that amount by the defendant, he (the plaintiff) agreed to hold the check for a few days until he could give defendant $500 in cash to cover the transaction — which was done and the cash deposited to defendant’s account; and that these facts are borne out by the ledger sheet of the National Bank of Commerce detailing defendant’s account, which shows a deposit of $500 on November 5, 1934, and a withdrawal of $500 on November 7, 1934; and (2) that following his many demands for the re-transfer of the property, the defendant fully acknowledged plaintiff’s ownership of the business by offering to purchase the same in July, 1946, as evidenced by a document in the form of a sale, dictated by defendant for plaintiff’s signature and incorporating a verbal offer to purchase, under the terms of which the plaintiff was to receive $500 cash, a 1941 Ford automobile, and five notes of $3,120 each, payable in equal weekly or monthly installments extending over a period of five years, with interest after maturity; and that the defendant had further agreed to transfer to him a $10,000 insurance policy on defendant’s life as security for the payment of the notes. In oral argument the plaintiff contended that these facts, coupled with the further fact that he was never on a salary basis but drew what he needed as occasion arose, and that all of his bills— such as homestead payments, automobile liability insurance payments, hospital bills, telephone bills, costly repairs to his house and certain installations therein — were paid by the company in addition to the amount received by him each week, proved without question that he was not in fact an employee but was the owner of the business.
The defendant’s version of the so-called offer to purchase is that due to advancing age (plaintiff was at the time past 70) the plaintiff was no longer, able to accurately perform his duties and had developed a spirit of non-cooperation, costly to the business; whereupon the defendant had offered to -plaintiff a plan of retirement whereby plaintiff was to receive $60 per week for the ensuing five years plus ownership of the Ford automobile he had been using in the business; that the notes and the assignment of the insurance policy were security for the weekly payment of $60; and that - the document on which plaintiff *938 relies was a rough dictation given to his ■secretary some days after the above agreement but never seen by the defendant after it was typed — having been placed on his desk during absence on a business trip and having disappeared therefrom before his return.
It appears that during the first World War and thereafter, plaintiff was engaged in the roofing business in New Orleans, and in 1923 or 1924 the defendant came to New Orleans at the instance of plaintiff and became plaintiff’s employee, which association continued until 1932 or 1933, at which time the plaintiff’s business had dropped off considerably due to the depression. The defendant then opened an office at his home and engaged in the roofing business independently. On November 3, 1934, the plaintiff and defendant executed a sale by authentic act, for the recited consideration of $500 cash, whereby the plaintiff transferred to the defendant a warehouse and certain movables and materials (4 desks, 2 typewriters, 1 adding machine, 1 safe, 1 metal locker, 4 filing cases, 1 stove, 5 chairs, 2 extension ladders, 2 kegs of nails, 24 squares blue slate), “all contained in the premises #7300 Washington Avenue, New Orleans, Louisiana.” The act also contains the following: “Vendor herein declared under oath to me, Notary, that he is the owner and operator of the Roofing Contracting business located at No. 7300 Washington Avenue, this City, and that there are no creditors of the said business, as of November 1st, 1934, ■ except the following:” (here follows a list of creditors with claims aggregating $1,503.01, and a claim, left blank, of Ludovici-Celadon Co.) “which the vendor herein binds and obligates himself to pay and which debts the vendor herein declared are represented by materials and supplies which are retained by the vendor herein.” Four days after the sale the defendant made affidavit of name and ownership of the Consolidated Roofing Company, which was duly recorded, certificate issued to him, and he took over plaintiff’s lease on the ground and began operating under the trade name of Consolidated Roofing Company.
Some months following the above transfer the plaintiff, to outward appearances, became an employee of the defendant at a fixed weekly salary. He did sales and estimating work, occupied a desk in the outer office with other estimators as they were employed, and, so far as could be observed by employees as -well as by those who had business dealings with the company, was simply an employee, having no voice in the conduct or management of the business as it grew from a very small enterprise to the handling of all types of roofing materials and the employment of some 130 persons. On the other hand, defendant’s actions were at all times consonant with ownership. He immediately transferred his personal bank account to the account which he opened in the name of Consolidated Roofing Company, de *940 posited and withdrew funds at will, authorized certain employees (but never the plaintiff) to sign checks; made and personally endorsed notes for the operation of the business, hired and .fired personnel, entered into contracts, and generally conducted the business in all its aspects as if he were the sole owner.
Testimony reveals that shortly after the sale the plaintiff told others he had sold out to the defendant, and this conclusion is further strengthened by a letter of the plaintiff written at an unsuspicious time to his principal creditor, Ludovici-Celadon Company, dated February 25, 1935, from which the following excerpts are, we think, pertinent: “In your letter of February 11th you mentioned having released shipment of tile to the Consolidated Roofing Company on open terms. Your letter refers to this as ‘my new company’. You also ask a property statement from which you might ascertain the financial set-up. Please be advised that the Consolidated Roofing Company is not ‘my company’. I have no financial interest in it whatsoever, therefore, I am not concerned about their financial set-up. However, for your information I am sure they will pay you for whatever material they might buy from you now, or in the future. For your further information, the Consolidated Roofing Company, as I understand it, is neither a partnership nor a corporation- — the name being merely a duly registered ‘Trade Name’, registered in accordance with the laws of the State of Louisiana. * * * You will, no doubt, recall my having written you sometime ago advising you that I had sold out my office and business to-this company, but I have been allowed the-privilege of maintaining my office at the old address until such time as accounts are all liquidated; and when such liquidation-is finally accomplished there will be sufficient funds to liquidate all your outstanding current invoices. * * * In the event that you should desire a property . statement from the Consolidated Roofing Co., would suggest that you forward them direct all the necessary blanks and etc., as customary in this procedure.”
The record also shows that during the-year previous to the sale plaintiff’s financial condition had become precarious, his house and homestead stock having been turned over to Ludovici-Celadon Company and his-realty holdings mortgaged to that company,, his household furniture having been mortgaged to his mother-in-law and his office furniture and automobile pledged to the defendant for an admitted indebtedness of some $400 or $500. Plaintiff had lost his agency for the tile of Ludovici-CeladonCompany, his business was practically nonexistent, his bank account on the date of sale reflected a balance of $47.07, and he was four months in arrears in his rent on-the premises at 7300 Washington Avenue —not to mention debts listed in the sale. As against this showing, it is difficult to-credit plaintiff’s, unsupported claim that he *942 gave to defendant $500 cash to cover the latter’s check, especially in view of the fact that the defendant’s bank account on November 3, 1934, showed a balance of more than $500. It is clear that the deposit of $500 by defendant on November 5, 1934, of itself proves nothing.
Apparently the most pleasant relationship existed between the plaintiff and defendant during the years of the company’s expansion until the spring of 1946, at which time the plaintiff began to show signs of carelessness and incompetence in his work. His estimates contained numerous errors, but he resented having them checked, and formed a habit of by-passing the office manager, whose duty it was to clear and submit estimates to customers— with the result that conflicting estimates were submitted for the same job. This situation was finally reported to the defendant at his home, where he was recuperating from an operation, and he gave instructions to the office manager to arrange a conference with the plaintiff for the purpose of straightening out the situation. This meeting took place on July 3, 1946. The defendant states that, in view of their long years of business association, instead of reprimanding or dismissing the plaintiff he -(the defendant) suggested the plan of retirement outlined above, with which the plaintiff appeared entirely pleased — and on these matters defendant is corroborated by the office manager, also present. To guarantee payment of the weekly pension of $60, defendant agreed to give notes, five in number, for $3,120 each, payable 1, 2, 3, 4 and 5 years from July 1, 1946 (the weekly payment of $60 totaling the face of the note due at the end of each year, and thus canceling each succeeding note over the 5 year period). As a further guarantee for the payment of the pension, defendant agreed to make plaintiff beneficiary of a $10,000 life insurance policy- — with, however, the understanding that all rights thereunder were reserved to the defendant. Pursuant to this agreement a change of beneficiary was effected (after plaintiff had signed a form accepting conditions and reservations to be made “when beneficiary is changed as requested”); ownership of the automobile was transferred to plaintiff; defendant gave him the notes, and a check for $500 which plaintiff had requested to take care of needed dental work; plaintiff was assigned no further duties and collected a weekly sum of $60 for the ensuing 31 weeks (at which time suit was filed, whereupon payments were discontinued). It was at about the time of the execution of the notes that the defendant, having been told of remarks made by plaintiff to another employee that he (plaintiff) was in reality a partner in the business, dictated the rough draft of the document relied on by plaintiff as an offer to purchase.
From our examination of the record, we think the evidence clearly substantiates the defendant’s version as given above. *944 With reference to plaintiff’s other claims of ownership as evidenced by payment of his personal bills and freedom to draw from the company any amount of money he needed, the exhibits as well as the testimony of witnesses uncontrovertibly prove that plaintiff has been employed on a salary basis from the start, the amount at first being $25 per week, in addition to which the company paid the premiums on his accident insurance and the monthly installments on his homestead. The record discloses that when the withholding of income tax became effective in 1943, the amount which plaintiff received as a salary plus the homestead and insurance payments were averaged, and he thereafter received a proportionately higher weekly wage and took care of his own obligations. The variation in weekly checks is accounted for by the fact that plaintiff’s work as a salesman required that he be allowed expenses; and the inference of employment is strengthened by the fact that on his income tax returns plaintiff has consistently reported the amount received each week as “salary,” and the “employer” as Consolidated Roofing Company. Other witnesses (employees) received advances for hospital bills and were allowed minor repairs to the roofs of their homes without cost — which is all that plaintiff can successfully prove.
We think the plaintiff has failed in all respects to establish his case with the degree of certainty required by the law. The trial judge was obviously of the same opinion as he ruled in defendant’s favor.
For the reasons assigned, the judgment of the district court is affirmed.